BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division
DEBRA D. FOWLER VA #30574
Senior Aviation Counsel
Debra.Fowler@usdoj.gov
ALAN D. MATTIONI PA #64259
Senior Aviation Counsel
Alan.Mattioni@usdoj.gov
KARLEEN F. MURPHY CA #197245
Trial Attorney
Karleen.F.Murphy@usdoj.gov
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Phone: (202) 616-4025
Fax: (202) 616-4002
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHESTER, individually and as Successor in Interest to SARAH CHESTER and PC, a minor, deceased; HC, a minor, by and through his Guardian ad Litem, Christopher Chester; RC, a minor, by and through his Guardian ad Litem, Christopher Chester;<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ISLAND EXPRESS HELICOPTERS, INC., a California Corporation; ISLAND EXPRESS HOLDING | Case No.: 2:20-cv-8955-FMO(PVCx)<br><br>**UNITED STATES OF AMERICA'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO THIRD-PARTY COMPLAINT FOR INDEMNITY AND DECLARATORY RELIEF OF ISLAND EXPRESS HELICOPTERS, INC. AND ISLAND EXPRESS HOLDING CORP.** |

1

CORP., a California Corporation; THE )
ESTATE OF ARA GEORGE )
ZOBAYAN; and DOES 1-100, )
inclusive, )
                                    )
            Defendants. )
_____ )
ISLAND EXPRESS HELICOPTERS, )
INC., a California Corporation; and )
ISLAND EXPRESS HOLDING )
CORP., a California Corporation, )
                                    )
        Third-Party Plaintiffs, )
                                    )
vs. )
                                    )
UNITED STATES OF AMERICA; and )
ROES 1 through 50, )
                                    )
        Third-Party Defendants. )
_____

Pursuant to this Court's Order (ECF 48), the United States of America,

having been substituted as a third-party defendant in place of Kyle Larsen and

Matthew Conley pursuant to 28 U.S.C. § 2679(d)(2), submits its amended answer

to the Third-Party Complaint[1] for Indemnity and Declaratory Relief of Island Express Helicopters, Inc. and Island Express Holding Corp. as follows:[2]

    1.      Upon information and belief, admitted.

    2.      Upon information and belief, admitted.

    3.      It is admitted only that Kyle Larsen is an individual residing in California.  By way of further answer, the United States has been substituted in place of Larsen as the only proper Third-Party Defendant in this action.

    4.      It is admitted only that Matthew Conley is an individual residing in California.  By way of further answer, the United States has been substituted in place of Conley as the only proper Third-Party Defendant in this action.

    5.      The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, and therefore denies same.

    6.      It is admitted only that Kyle Larsen and Matthew Conley were employees of the United States and were acting within the course and scope of

---

[1] The Third-Party Complaint was denominated a Cross-Complaint when originally filed in state court. California Code of Civil Procedure employs the terminology "cross-complaint" for the pleading a defendant may file against a person not already a party to the action, as was filed here, and it defines the person who filed the cross-complaint as a "Third-Party Plaintiff" and the person alleged to be liable as a "Third-Party defendant."  Cal. Civ. Pro. Code §§ 428.10, 428.70.  Hereafter, the terms Third-Party Plaintiff, Third-Party Defendant and Third-Party Complaint will be used in keeping with the terminology used in the Federal Rules of Civil Procedure.

[2] The claims for declaratory relief have been dismissed. ECF 48.  As such, no response to those claims is necessary.

3

United States' Amended Answer and Affirmative Defenses           2:20-cv-8955-FMO (PVCx)

their employment at the time of the acts and omissions alleged in the Third-Party Complaint.  All other allegations in this paragraph are denied.

7.    The United States admits only that Island Express Helicopters, Inc. and Island Express Holding Corp. initially sought relief against the individually named Third-Party Defendants, Kyle Larsen and Matthew Conley, and others listed in paragraph 7, but denies that any relief can be obtained from Larsen and Conley in light of the substitution of the United States pursuant to U.S.C. § 2679(d)(2).  All other allegations in this paragraph are denied.

8.    The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph, as well as the allegations from Plaintiffs' Complaint that are purportedly incorporated by reference, and therefore denies all such allegations unless specifically admitted herein.

9.    Admitted.

10.    It is admitted that the subject helicopter departed from John Wayne-Orange County Airport (KSNA) in Santa Ana, California and was, at least initially, destined for Camarillo Airport (KCMA) in Camarillo, California.  The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies same.

11.    It is admitted that the helicopter crashed at approximately 9:45 a.m. PST near Calabasas, California and that a post-impact fire ensued.  It is further

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

admitted that the pilot, Ara George Zobayan, and his eight passengers were fatally injured, and the helicopter was destroyed.  The United States lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph, and therefore denies same.

12.     Admitted.

13.     It is admitted that the Southern California Terminal Radar Approach Control facility ("SOCAL") is a Terminal Radar Approach Control ("TRACON") facility operated by the Federal Aviation Administration ("FAA").  It is further admitted that Kyle Larsen and Matthew Conley were acting in the course and scope of their employment as FAA air traffic controllers at SOCAL during the time of the alleged erroneous acts and/or omissions.  It is denied the accident was caused by a series of erroneous acts and/or omissions committed by Larsen and Conley.

14.     It is denied that the pilot of the subject helicopter "transitioned" from Burbank Air Traffic Control Tower to SOCAL.  It is admitted that the pilot of the helicopter contacted SOCAL by radio and spoke with two air traffic controllers. The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation that the pilot "remained on that frequency until the time of the accident," and therefore denies same.  It is admitted that the first SOCAL air traffic controller the pilot spoke with was Kyle Larsen.  It is denied that the

United States' Amended Answer and Affirmative Defenses                    2:20-cv-8955-FMO (PVCx)

helicopter was in "radar contact" at this time, and further denied that the pilot

requested flight following from Larsen.  Upon information and belief, it is

admitted that, at approximately 1740:25 UTC, Larsen stated, "and two echo x-ray

roger uh I'm gonna lose radar and uh comms with you probably pretty shortly so

you can just squawk v-f-r and uh when you get closer go to Camarillo tower."  It is

denied that Larsen improperly refused to provide services "based on the possibility

that they might be lost at some point in the future," as alleged.  It is admitted that

the pilot was able to contact SOCAL by radio at approximately 1744:34 UTC.  The

United States lacks knowledge or information sufficient to form a belief about the

truth of the allegation that the helicopter's "transponder was still observed by the

controller" and therefore denies same.  It is further denied that "the prediction of

lost contact was not accurate and services could and should have been provided

continuously."  All other allegations in this paragraph are denied.

15.    It is admitted that FAA Order JO 7110.65Y, Air Traffic Control,

paragraph 2-1-1 c, states, in part, that "The provision of additional services is not

optional on the part of the controller, but rather required when the work situation

permits."  By way of completeness, paragraph 2-1-1 c. also states, "The ATC

system must provide certain additional services to the extent permitted," and "It is

recognized that the provision of these services may be precluded by various

factors, including but not limited to:  1. Volume of traffic.  2. Frequency

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

congestion.  3. Quality of surveillance.  4. Controller workload.  5. Higher priority

duties.  6. The physical inability to scan and detect situations falling in this

category."  It is denied that "[r]adar advisories to VFR aircraft" is an "additional

service" as defined by FAA Order JO 7110.65Y.  The United States lacks

knowledge or information sufficient to form a belief about the truth of the

allegation that "The SOCAL controller was not too busy to provide service," since

there is no identification of the individual, the time, or the service referred to in this

paragraph.  It is admitted that the National Transportation Safety Board ("NTSB")

Docket for the accident includes a summary of an interview with Kyle Larsen that

states, "On a scale of 1 to 5 (5 being the heaviest) he classified the traffic volume

as 2 around the time he provided services to N72EX.  On a scale of 1 to 5 (5 being

the most complex) he classified the traffic complexity as 2 around the time he

provided services to N72EX.  He considered the traffic volume and complexity

normal for the time of day and tempo of operations."  It is further admitted that the

NTSB Docket for the accident contains a summary of an interview with Matthew

Conley that states, "On a scale of 1 to 5 (5 being the heaviest) he classified the

traffic volume as 3 around the time of the accident.  On a scale of 1 to 5 (5 being

the most complex) he classified the traffic complexity as 2 around the time of the

accident.  He considered the traffic volume and complexity normal for the time of

day and tempo of operations."  All other allegations in this paragraph are denied.

16.     It is admitted that the pilot first contacted air traffic controller Kyle Larsen at SOCAL TRACON at approximately 1740:07 UTC and that a position relief briefing began at approximately 1742:58 UTC.  It is further admitted that the pilot contacted SOCAL air traffic controller Matthew Conley at approximately 1744:34 UTC and, upon information and belief, stated "and SOCAL for helicopter two echo x-ray we gonna go ahead and start our climb to go above the uh layers and uh we can stay with you here."  It is denied that SOCAL air traffic controller Kyle Larsen had an obligation to inform Matthew Conley "as to the existence of N72EX," as alleged.  It is further denied that "critical time was lost as Conley struggled to identify N72EX with no help from Larsen."  All other allegations in this paragraph are denied.

17.     It is admitted only that the NTSB Docket for the accident includes a summary of an interview with Matthew Conley which states, in part, "He remembered the pilot just talking to him like he had already been in contact and was receiving services, but he had no record of him."  All other allegations in this paragraph are denied.

18.     It is admitted only that FAA Order JO 7110.65Y, Air Traffic Control, paragraph 5-1-13, Radar Service Termination, states, in part, "Inform aircraft when radar service is terminated.  PHRASEOLOGY – RADAR SERVICE

TERMINATED (nonradar routing if required)."  All other allegations in this

paragraph are denied.

19.    It is admitted only that the Pilot/Controller Glossary contained in the

Aeronautical Information Manual in effect at the time of the accident states, in

part, "RADAR SERVICE TERMINATED – Used by ATC to inform a pilot that

he/she will no longer be provided any of the services that could be received while

in radar contact."  All other allegations in this paragraph are denied.

20.    Denied.

21.    The United States lacks knowledge or information sufficient to form a

belief about the truth of the allegations concerning what the pilot was thinking or

assuming, and therefore denies same.  All other allegations in this paragraph are

denied.

22.    It is denied that the accident was also caused by the failure of Larsen

and Conley to properly execute a position relief briefing.  It is admitted that FAA

Order JO 7110.65Y, Air Traffic Control, paragraph 2-1-24, Transfer of Position

Responsibility, states "The transfer of position responsibility must be

accomplished in accordance with the 'Standard Operating Practice (SOP) for the

Transfer of Position Responsibility,' and appropriate facility directives each time

operational responsibility for a position is transferred from one specialist to

another."  It is further admitted that paragraph   3-1-8 of SCT SOP 7110.65B,

9

Change 3, states, in part, "The transfer of position responsibility must be accomplished to provide and maintain operational continuity.  The relief briefing must involve the use of a tailored checklist, which lists the equipment and the operational conditions applicable to the position being relieved.  Position relief briefings must be recorded."  All other allegations in this paragraph are denied.

23.     It is denied, based upon a summary of an interview in the NTSB docket for the accident, that during his NTSB interview, Larsen "admitted that he does not normally use a checklist when conducting a position relief briefing."  It is admitted that the NTSB Docket for the accident includes a summary of an interview with Matthew Conley that states, in part, "A relief briefing was conducted when he assumed the position, and when he was relieved from the position.  The briefings were recorded, and a checklist was utilized."  All other allegations in this paragraph are denied.

24.     It is admitted that paragraph 3-1-8 b. of SCT SOP 7110.65B, Change 3, states, in part, "After giving the required position relief briefing on any position, including flight data, the controller being relieved must remain plugged in for a minimum of two (2) minutes with the relieving controller to make sure all pertinent information and traffic situations are communicated and understood."  It is further admitted that the NTSB Docket for the accident includes a summary of an interview with Kyle Larsen that states, in part, "Group:  After completing a

10

position relief briefing, is there any requirement to overlap or do you just unplug? KA:  There is a required 2-minute overlap.  Group:  Did you do this when you were relieved from the WDLR position that day?  KA:  Yes."  All other allegations in this paragraph are denied.

25.    It is admitted that the NTSB Docket for the accident contains a summary of an interview with Matthew Conley that states, in part, "I noticed it was foggy and there were low ceilings when I came into work that morning," and "He recalled the weather around the time of the accident was IFR with low ceilings and instrument approaches were being conducted."  It is further admitted that a note to paragraph 2-1-2 c. of FAA Order JO 7110.65Y, Air Traffic Control, "Controllers are responsible to become familiar with and stay aware of current weather information needed to perform ATC duties."  All other allegations in this paragraph are denied.

26.    The United States denies the allegations in the first sentence of paragraph 26.  It is admitted that paragraph 10-2-5 of FAA Order 7110.65Y, Air Traffic Control, discusses emergency situations but the United States denies that the partial quotation of that paragraph set forth in paragraph 26 is accurate.  It is admitted that the NTSB Docket for the accident contains a summary of an interview with Kyle Larsen that states, in part, "Group: Would you have notified the sup had you lost radar and radio on N72EX when he was coming over from

United States' Amended Answer and Affirmative Defenses                2:20-cv-8955-FMO (PVCx)

VNY?  KA:  Yes."  It is further admitted that the NTSB Docket for the accident contains a summary of an interview with Matthew Conley that states, in part, "Group:  You did not report this occurrence because he had not been tagged up yet, and therefore had not yet begun receiving flight following?  CO:  Correct." and, "Group:  So, you did not consider him radar identified?  CO:  No because I did not advise the pilot he was 'radar contact.'"  All other allegations in this paragraph are denied.

27.    Denied.

28.    The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning what the pilot assumed or what other unidentified pilots might assume when in radar contact with air traffic control, and therefore denies same.  The United States further lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning what the "calculated data" indicates as to the flight path and attitude of the subject helicopter, and therefore denies same.  All other allegations in this paragraph are denied.

29.    Denied.

30.    It is denied that Larsen and Conley engaged in any negligent acts and/or omissions.  It is admitted that the FAA Instrument Flying Handbook (2012) states the following with respect to the Coriolis Illusion:  "The coriolis illusion

12

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

occurs when a pilot has been in a turn long enough for the fluid in the ear canal to move at the same speed as the canal.  A movement of the head in a different plane, such as looking at something in a different part of the flight deck, may set the fluid moving and create the illusion of turning or accelerating on an entirely different axis.  This action causes the pilot to think the aircraft is doing a maneuver that it is not.  The disoriented pilot may maneuver the aircraft into a dangerous attitude in an attempt to correct the aircraft's perceived attitude.  For this reason, it is important that pilots develop an instrument cross-check or scan that involves minimal head movement. Take care when retrieving charts and other objects in the flight deck – If something is dropped, retrieve it with minimal head movement and be alert for the coriolis illusion." The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning what the "calculated data or radio traffic" indicates as to the pilot or the subject helicopter, and therefore denies same.  All other allegations in this paragraph are denied.

     31.    Denied.

     32.    To the extent an answer is required, denied.

     33.    The United States incorporates by reference its answers to paragraphs 1 through 32 as though set forth at length herein.

## FIRST CAUSE OF ACTION
**(Total Equitable Indemnity as to All Third-Party Defendants)**

34.    Denied.

35.    Denied.

## SECOND CAUSE OF ACTION
**(Equitable Indemnity as to All Third-Party Defendants)**

36.    Denied.

## THIRD CAUSE OF ACTION
**(Equitable Apportionment of Fault as to All Third-Party Defendants)**

37.    Denied.

## FOURTH CAUSE OF ACTION
**(Contribution as to All Third-Party Defendants)**

38.    Denied.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief as to All Third-Party Defendants)**

Pursuant to the Court's Order of May 3, 2021, ECF 48, the claims for declaratory relief have been dismissed and no answer to these allegations is necessary.

## PRAYER FOR RELIEF

1.    It is denied that Third-Party Plaintiffs are entitled to any of the relief requested in this paragraph.

2.    It is denied that Third-Party Plaintiffs are entitled to any of the relief requested in this paragraph.

14

3.      It is denied that Third-Party Plaintiffs are entitled to any of the relief requested in this paragraph.

4.      It is denied that Third-Party Plaintiffs are entitled to any of the relief requested in this paragraph.

5.      It is denied that Third-Party Plaintiffs are entitled to any of the relief requested in this paragraph.

## AFFIRMATIVE DEFENSES AND OTHER MATTERS

1.      The United States, its agents, servants and employees breached no duty owed to the Third-Party Plaintiffs, the Plaintiffs, the Plaintiffs' decedents or the Defendants.

2.      No act or omission by the United States or its agents, servants and employees, even if negligent, was a proximate cause of any injuries or damages alleged in the Complaint or the Third-Party Complaint.

3.      The injuries and damages alleged in the Complaint and the Third-Party Complaint were solely and proximately caused by the negligence, gross negligence, recklessness and/or fault of persons or entities over which the United States had no control or right of control and for whom it is not legally responsible.

4.      Any liability on the part of the Third-Party Defendant United States, said liability being expressly denied, is barred or must be reduced by the negligence, gross negligence, recklessness, assumption of the risk and/or other

fault of persons or entities over which the United States had no control or right of control and for whom it is not legally responsible.

5.      The negligence, gross negligence, recklessness and/or other fault of persons or entities over which the United States had no control or right of control, was a proximate cause of the accident and constitutes an intervening, superseding cause which was not foreseeable thus barring any alleged liability on behalf of the United States.

6.      In the event the United States is found to be at fault for any claim in this action, said fault being expressly denied, fault must be apportioned among and allocated to all persons and entities in accordance with the applicable law.

7.      In the event the United States is found to be at fault for any claim in this action, said fault being expressly denied, the United States is only liable for its proportionate share of non-economic damages, if any, as set forth in the Cal. Civ. Code § 1431.2.

8.      Any recovery against the United States must be reduced or otherwise limited by virtue of any settlements relating to the accident.

9.      Third-Party Plaintiffs are not entitled to total equitable indemnity from the United States.

10.     Third-Party Plaintiffs are not entitled to equitable indemnity from the United States.

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

11.     Third-Party Plaintiffs are not entitled to equitable apportionment of fault as to the United States.

12.     Third-Party Plaintiffs are not entitled to contribution from the United States.

13.     Third-Party Plaintiffs are not entitled to attorney fees and expenses of preparation and investigation.

14.     Third-Party Plaintiffs are not entitled to attorney fees from the United States.  28 U.S.C. §§ 1920, 2412, 2678.

15.     Third-Party Plaintiffs are not entitled to a jury trial against the United States.  28 U.S.C. § 2402.

16.     Third-Party Plaintiffs are not entitled to prejudgment interest from the United States.  28 U.S.C. § 2674.

WHEREFORE, the United States demands dismissal of the Third-Party Complaint and all claims asserted therein, along with its costs, disbursements, the reasonable value of its attorney fees and such other, further relief as the Court may deem just and proper.

 Dated: May 14, 2021

                              Respectfully submitted,

                              BRIAN BOYNTON
                              Acting Assistant Attorney General
                              Civil Division

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

*/s/ Debra D. Fowler*
DEBRA D. FOWLER
Senior Aviation Counsel
Debra.Fowler@usdoj.gov
ALAN D. MATTIONI
Senior Aviation Counsel
Alan.Mattioni@usdoj.gov
KARLEEN F. MURPHY
Karleen.F.Murphy@usdoj.gov
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Tel: (202) 616-4025
Fax: (202) 616-4002

Attorneys for United States

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)

## <u>CERTIFICATE OF SERVICE</u>

I, Debra D. Fowler, hereby certify that a true and correct copy of the United

States' Amended Answer and Affirmative Defenses was electronically filed with

the Clerk of the Court using CM/ECF on May 14, 2021.  I further certify that said

document was served upon each of the following via transmission of Notices of

Electronic Filing generated by CM/ECF and/or electronic mail:

Wylie Aitken, Esquire
Darren O. Aitken, Esquire
Michael A. Penn, Esquire
AITKEN AITKEN COHN
3 Macarthur Place, Suite 800
Santa Ana, CA 92707-2555
(714) 434-1424
wylie@aikenlaw.com
darren@aitkenlaw.com
michael@aitkenlaw.com
*Attorneys for Plaintiffs, Christopher Chester, et al.*

and

Ross Cunningham, Esquire
Don Swaim, Esquire
D. Todd Parrish, Esquire
CUNNINGHAM SWAIM, LLP
4015 Main Street, Suite 200
Dallas, Texas  75226
(214) 646-1495
rcunningham@cunninghamswaim.com
dswaim@cunninghamswaim.com
tparrish@cunninghamswaim.com

Michael J. Terhar, Esquire
CUNNINGHAM SWAIM, LLP

19

United States' Amended Answer and Affirmative Defenses                    2:20-cv-8955-FMO (PVCx)

2 North Lake Avenue, Suite 550
Pasadena, California  91101
(626) 765-3000
mterhar@cunninghamswaim.com

Todd Worthe, Esquire
WORTH HANSON & WORTHE
1851 E. First Street, 9th Floor
Santa Ana, CA 92705
(714) 285-9600
tworthe@whwlawcorp.com
*Attorneys for Defendants/Third-Party Plaintiffs Island Express Helicopters,*
*Inc. and Island Express Holding Corp.*

and

Arthur I. Willner, Esquire
LEADER BERKON COLAO & SILVERSTEIN LLP
660 South Figueroa Street, Suite 1150
Los Angeles, CA 90017
(213) 234-1750
awillner@leaderberkon.com

Raymond L. Mariani, Esquire
LEADER BERKON COLAO & SILVERSTEIN LLP
630 Third Avenue, Floor 17
New York, NY 10017
(212) 486-2400
rmariani@leaderberkon.com
*Attorneys for Defendant Berge Zobayan*
*as Successor in Interest for Ara George Zobayan*

and

TIMOTHY J. RYAN. Esquire
REBEKKA R. MARTORANO, Esquire
THE RYAN LAW GROUP
400 Capitol Mall, Suite 2540
Sacramento, California 95814
(916) 924-1912

20

tryan@ryanlg.com
rmartorano@ryanlg.com
*Attorneys for Defendant OC Helicopters, LLC*



/s/ *Debra D. Fowler*
Attorney for United States of America

United States' Amended Answer and Affirmative Defenses          2:20-cv-8955-FMO (PVCx)